There is no issue before us, except as to that amount.

The Court of Appeal has jurisdiction.

Had the district court refused to grant an appeal to that court, and if the relator had a right to that appeal, it (the Court of Appeal) had the power to issue the necessary writ, and the relator had the right to compel the granting of the order of appeal. Article 104 of the Constitution.

Having chosen not to take an appeal to the tribunal having jurisdiction, the relator is without right to invoke the supervisory jurisdiction of this court.

Without adding other grounds, the court deemed the foregoing sufficient to sustain the conclusion expressed.

For reasons stated, relator's demand is denied and his petition dismissed.

═══════

(55 South. 986.)

No. 18,816.

SOUTHERN LUMBER CO. v. HOLT.

In re SOUTHERN LUMBER CO.

(June 26, 1911.)

*(Syllabus by Editorial Staff.)*

1. CORPORATIONS (§ 673*)—CONTRACTS—PLACE —PRESUMPTIONS.

Where it was claimed that plaintiff foreign corporation had no power to do business, except in two counties in Texas specified in its charter, it would be presumed, in the absence of evidence to the contrary, that a contract for the purchase of the assets of a sawmill company in Louisiana was legally made in the counties where plaintiff was authorized to do business.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2535; Dec. Dig. § 673.*]

2. CORPORATIONS (§ 387*)—ACTS—ULTRA VIRES.

Where a corporation purchases, pays for, and takes an assignment of a cause of action respecting matters outside the purpose of its creation, and not authorized by its charter, want of corporate power is no defense to an action to enforce the claim so purchased.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1552; Dec. Dig. § 387.*]

3. CORPORATIONS (§ 387*)—CAPACITY—ULTRA VIRES.

Ultra vires acts of a corporation can be questioned only by a person directly interested in the corporation, or by the state.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1548; Dec. Dig. § 387.*]

4. CORPORATIONS (§ 673*)—FOREIGN CORPORATIONS—RIGHT TO DO BUSINESS—CERTIFICATE OF STATE—REQUISITES—PRESUMPTION.

Where a declaration of a foreign corporation's intention to do business within the state, and the resolution of the corporation's board of directors adopting it and directing that it be filed, bore date more than a year before the institution of a suit by the corporation in Louisiana, it would be presumed that the declaration was filed in due course after its adoption, before the institution of the suit, and was sufficient, though the certificate of the Secretary of State was defective in failing to state the date of the filing of the declaration in his office.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2534, 2535; Dec. Dig. § 673.*]

5. CORPORATIONS (§ 673*)—FOREIGN CORPORATIONS—RIGHT TO DO BUSINESS IN STATE—PROOF.

Production of a certificate of the Secretary of State, authorizing a foreign corporation to do business within the state, discharges the burden on the corporation of proving its right to do business within and to sue in the courts of Louisiana.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2558; Dec. Dig. § 673.*]

6. CORPORATIONS (§ 671*)—FOREIGN CORPORATIONS—INJUNCTION—DISSOLUTION — RIGHT TO SUE.

An injunction granted a foreign corporation will not be dissolved because plaintiff had not complied with the laws regulating the right of foreign corporations to do business within the state at the time the suit was brought, where complainant showed full compliance therewith at the time of the trial.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2643, 2644; Dec. Dig. § 671.*]

Breaux, C. J., dissenting.

Action by the Southern Lumber Company against Lee Holt. Judgment for defendant affirmed by the Court of Appeal, and plaintiff applies for certiorari or writ of review. Reversed.

Hall & Jack, for appellant. Herndon & Herndon, for appellee.

PROVOSTY, J. The plaintiff is a Texas corporation.

Its charter provides as follows:

"The purpose for which it is formed is the manufacture of lumber, and the purchase and sale of such goods, wares and merchandise as are used for such business, and the ownership of lands, machinery and equipment as are essential and incidental to the said business.

"The place or places where its business is to be transacted are Texarkana, Bowie county, Texas and Nacogdoches county, Texas. Its principal place of business being in Texarkana, Texas."

Plaintiff bought out a certain sawmill company in the parish of Caddo, in this state, including all its property and rights. Among these were timber lands and the contract right to construct a tramroad across the farm of defendant, for hauling timber. After plaintiff had constructed the roadbed of this tramroad and was about to lay the track defendant made opposition, and plaintiff brought the present injunction suit to prevent defendant from interfering.

Defendant excepted to the suit on the grounds:

"(1) That plaintiff was without authority or capacity to stand in judgment and prosecute this suit.

"(2) That plaintiff has failed to comply with the Constitution and laws of the state of Louisiana in regard to foreign corporations."

These exceptions were referred to the merits. Defendant then filed an answer contesting the validity of the contract sued on.

By the second of these exceptions was meant that plaintiff had not complied with article 264 of the Constitution and Act 54 of 1904, p. 133, carrying that article into effect. The article reads:

"No domestic or foreign corporation shall do any business in this state without having one or more known places of business and an authorized agent or agents in the state upon whom process may be served."

Act 54 of 1904 merely carries out that article by requiring the place of business and the agent of the corporation to be designated by means of a declaration filed in the office of the Secretary of State.

On the trial plaintiff offered a certificate of the Secretary of State showing that such a declaration had been filed.

The trial court was of opinion that, inasmuch as plaintiff was authorized by its charter to do business only in certain specified counties in Texas, it was without authority or capacity to stand in judgment and prosecute the suit, and so dismissed the suit. Plaintiff carried the case to the Court of Appeal, and that court affirmed the judgment, but on a different ground—on that stated in the second exception, namely, that plaintiff had not complied with article 264 of the Constitution and Act 54 of 1904. Its reason for so finding was that the certificate of the Secretary of State did not show at what date the declaration required by Act 54 of 1904 had been filed in the office of the Secretary of State, whether before or after the filing of the suit.

[1] Assuming, for the argument, that under the above-quoted provisions of its charter the plaintiff company was without ability to do business elsewhere than in the counties named in its charter as the places where its business was to be done, there is nothing to show that it acquired this contract elsewhere than in said counties.

"When a foreign corporation sues on a contract and there is nothing to show where it was made, it will be presumed that it was lawfully made; for instance, that it was made out of the state, or before enactment of the statute, or after compliance therewith, such a compliance being shown." 19 Cyc. 1322.

But if it were otherwise, if the assignment of the contract to plaintiff took place in

Louisiana, defendant's position would be no better.

[2] "If a corporation purchases, pays for, and takes an assignment of a cause of action respecting matters outside the purpose of its creation and not authorized by its charter, in an action to enforce such cause of action want of corporate power to engage in such business cannot be interposed as a defense." 29 A. & E. E. of L. p. 73; citing Farwell Company v. Wolf, 96 Wis. 10, 70 N. W. 289, 37 L. R. A. 138, 65 Am. St. Rep. 22.

In that case a corporation organized for the purpose of carrying on a general dry goods business purchased from others a claim for damages growing out of an alleged conspiracy to defraud, but in no way connected with its affairs. The court held that:

"Although the act of a corporation in acquiring a cause of action is ultra vires, yet want of corporate power to engage in such business cannot be interposed as a defense when the corporation seeks to enforce such cause of action."

[3] The court, after holding the purchase of the claim to have been ultra vires, added (96 Wis. 13, 70 N. W. 290, 37 L. R. A. 139, 65 Am. St. Rep. 23):

"But it by no means follows that its want of power can be taken advantage of by the defendants in this action. Formerly want of corporate power was an effective weapon, both for defense and attack, in the hands of private parties; but, without any change whatever respecting the general doctrine of ultra vires as applied to the acts of corporations acting outside the purposes of their creation, there has been a gradual development in the direction of holding that none but a person directly interested in the corporation, or the state, can question such authority. Such development from the rigorous rule which anciently obtained was manifested earliest in the adoption of the rule that, where a corporation had violated its charter in the purchase and acquirement of real estate, its title thereto and right to enjoy the same cannot be inquired into collaterally in actions between private parties or between the corporation and private parties; that it can be questioned only by the state. Natoma, etc., Co. v. Clarkin, 14 Cal. 544; Alexander v. Tolleston Club, 110 Ill. 65; Fritts v. Palmer, 132 U. S. 282, 10 Sup. Ct. 93, 33 L. Ed. 317; Runyan v. Coster, 14 Pet. 122, 10 L. Ed. 382; National Bank v. Whitney, 103 U. S. 99, 26 L. Ed. 443; Shewalter v. Pirner, 55 Mo. 218; Ragan v. McElroy, 98 Mo. 349, 11 S. W. 735; National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188."

In the latter case, the Supreme Court of the United States, reversing the Supreme Court of the state of Missouri, laid down the rule that:

"Where a corporation is incompetent by its charter to take a title to real estate, a conveyance to it is not void, but only voidable, and the sovereign alone can object;" that "it is valid until assailed by a direct proceeding instituted for that purpose by the government, and, further, in effect, that the danger of a judgment of ouster and dissolution is the only check to prevent and punish violations of corporate charters."

The reasoning of our Brethren of the Court of Appeals was that the enforcing of the contract by suit was a doing of business, and that at the institution of the suit plaintiff had not yet complied with the above-quoted constitutional article and statute.

[4] We think that the certificate of the Secretary of State, imperfect though it was, in that it did not mention the date of the filing of the declaration in the office of the Secretary of State, was nevertheless sufficient to show that the filing of the requisite declaration had taken place before the institution of the suit. The declaration itself and the resolution of the plaintiff's board of directors, adopting it and directing it to be filed, bore date more than one year before the institution of the suit. The reasonable presumption is that this declaration, thus adopted for the purpose of being filed and thus directed to be filed, was filed in due course after its adoption—long before the institution of this suit.

[5, 6] By the production of this certificate of the Secretary of State, the plaintiff fully discharged the burden which, in the case of Southwestern Tel. Co. v. Kansas City R. R. Co., 108 La. 691, 32 South. 958, was said to rest upon the foreign corporation when the issue of its having complied with the provision of article 264 of the Constitution and Act 54 of 1904, was raised. But if the view be taken that said certificate fell short of showing positively that the requirement of

said laws was complied with before the institution of the suit, still it did show that the compliance had taken place before the trial, and that in consequence all the disabilities which plaintiff had theretofore been under because of noncompliance with said laws had then ceased, and, such being the case, that the injunction should not be dissolved, as the effect of dissolving it would be simply to put the plaintiff to the useless expense and trouble of at once suing out another. An injunction should not be dissolved on a ground which, though good at the time the injunction was obtained, is no longer so by the time of the trial. Speyrer v. Miller, 108 La. 212, 32 South. 524, 61 L. R. A. 781.

The judgments of the Court of Appeal and of the district court in this case are therefore set aside, and the case is remanded, to be proceeded with according to law.

BREAUX, C. J., dissents. LAND and SOMMERVILLE, JJ., concur.