95 So.2d 370 (1957)
QUAKER HILL, Incorporated, Plaintiff-Appellant,
v.
H. H. GUIN, Defendant-Appellee.
No. 8667.
Court of Appeal of Louisiana, Second Circuit.
April 26, 1957.
Rehearing Denied May 27, 1957.
*371 Hudson, Potts & Bernstein, Billye Adams, Monroe, for appellant.
McHenry, Lamkin, Snellings & Breard, Monroe, for appellee.
GLADNEY, Judge.
This appeal is from a judgment sustaining an exception of want of capacity leveled at a foreign corporation charged with doing business in Louisiana without having met the qualifications therefor. The basis for the trial court's decision stems from the provisions of LSA-R.S. 12:211, which prohibits a corporation doing business in this state from presenting any judicial demand before any court of this state until it has complied with the laws for doing business within the state.
The single issue raised is whether the appellant, Quaker Hill, Incorporated, is engaged in doing business within the state. The contention is made by its counsel it is engaged exclusively in interstate business and enjoys immunity from the Louisiana statute under the commerce clause of the Federal Constitution. (Const.U.S., art. 1, § 8, cl. 3). Whether or not a foreign corporation is, in legal contemplation, doing business in Louisiana, is a mixed question of law and fact, to be determined by the particular facts of its operations here. Dyer & Co. v. Ferguson, La.App.1946, 25 So.2d 92, Proctor Trust Co. v. Pope, La. App.1943, 12 So.2d 724.
Exceptor tendered in support of his exception the testimony of Milton E. Weaks, the District Sales Manager for the plaintiff corporation, having his residence in Baton Rouge, Louisiana, V. J. Pleasant, the local *372 Sales Manager for plaintiff corporation, residing in Monroe, Louisiana, and Rene Casadaban, a florist or horticultural dealer from Abita Springs, Louisiana.
Also placed in evidence was a certificate of the Secretary of State, certifying that as of December 19, 1956, the records of his office did not indicate Quaker Hill, Incorporated, a New York corporation, had ever filed a charter and qualified to do business in the State of Louisiana.
The testimony of Pleasant added nothing to that of Weaks. Casadaban testified over objection by counsel for appellant that he sold merchandise consisting of nursery stock, having a value of about $55,000 in 1956 to C. W. Stewart and Company of New York for shipment to either New York or Columbus, Mississippi. He further stated he knew Quaker Hill, Incorporated and C. W. Stewart and Company were in some way connected, but he did not know if the latter was the parent company of Quaker Hill, Incorporated. The testimony does not furnish any competent evidence as to the volume of business transacted by Quaker Hill, Incorporated, within the state.
Testimony of Weaks was the principal source of information concerning appellant's business in Louisiana. A résumé thereof discloses that Quaker Hill, Incorporated, has no property within the state; it employs four District Managers or salesmen, three of whom reside in Louisiana; its salesmen take orders for nursery stock from prospective customers in Louisiana, which orders, together with the purchase price or a part payment thereof, are transmitted to the New York office for acceptance or rejection there, and, if accepted, the plants so ordered are shipped from there or from Columbus, Mississippi; it does not require its salesmen to make collections, but they may take replacement orders for stock which has failed to grow; and further, the evidence shows that Quaker Hill, Incorporated, does not, itself, make any purchases of nursery stock in Louisiana. The method by which its sales are accomplished, together with comments thereon, is stated in the opinion of the District Judge:
"The method of making the sale is that the local salesman in Louisiana goes to the home of the prospective buyer and talks to him about his yard, what he should plant and how he should plant it and that he then makes an actual drawing on the premises of the lot and house to scale and marks thereon where each individual item that he seeks to sell should be planted. One of the plans in question of this company marked `Landscape Drawing' was exhibited to one of the witnesses on the stand, although it was not offered in evidence, it was identified by the witness. There is no question that this was landscape work, that is what landscaping is. Now Louisiana has certain laws governing the right to do that kind of work. It is admitted here the agents and salesmen of plaintiff have not complied with these laws. These salesmen, after doing this work and submitting this scale model plat to the purchaser, secure an order from the purchaser for the necessary-plants to carry out the landscaping plan. It has been testified by the agents, both the local and the agent in charge of both states, that an order is then signed here in Louisiana by the prospective purchaser. The wording in this order which is printed by the plaintiff in his blank provides that for the services rendered before the signing of the order the purchaser obligates himself not to cancel this order and to be bound thereby. It was also testified that the only services rendered prior to the signing of this order by the salesman is this drawing of the plat and advice as to what to plant and where to plant it, in other words, the actual landscaping. That service is made part of the contract under which the purchaser agrees to buy the plants to use in carrying out the landscaping plan. So there can be no question that the price paid therefor includes not only the price of the plants but covers the expense and costs referred to in the order, to-wit, the expense and costs of preparing the landscaping plan. The Court *373 does not see how any Court could hold this is not doing business in Louisiana." (Emphasis as supplied by District Judge.)
The judge a quo concluded appellant was actually doing business in Louisiana, principally because its salesmen solicited orders by use of a planting plan prepared by them, and the expense of preparing the plan was included in the price of the plants ordered, and, therefore, consists of selling services. Appellant strongly questions these findings, contending the evidence does not establish the expense and costs incident to preparation of the planting plan were included in the price for which the customer was billed. It is pointed out the subject clause in the contract, "because of services rendered and expenses incurred by the seller, I agree not to countermand this order", refers only to Quaker Hill, Incorporated, which is the seller. The services and expenses, it is argued, refer to the processing of the order, that is to saypreparation for shipping, shipping tags, etc.
Well recognized is the legal principle that under comity and general jurisprudence, there is a presumption in favor of the right of a foreign corporation to engage in commerce within the State of Louisiana. Thus, in Hess Warming & Ventilating Co., Inc., v. Home Comforts Corporation, 1944, 205 La. 1045, 18 So.2d 611, 612, our Supreme Court said:
"The rule is founded upon the presumption in favor of the right of a foreign corporation to do business or to sue, because it is always presumed that persons obey the law * * *."
As long as the business transacted by a foreign corporation is exclusively engaged in interstate commerce, it is protected by the commerce clause of the Federal Constitution Const.U.S., art. 1, § 8, cl. 3. However, when such commerce is not solely of an interstate character, the protection of the commerce clause can no longer be invoked and it is appropriate for a state to prohibit the presentation of any judicial demand by such a foreign corporation, unless and until it has complied with the laws of this state for doing business herein. R. J. Brown Co. v. Grosjean, 1938, 189 La. 778, 180 So. 634. Therefore, the State of Louisiana through the provisions of LSA-R.S. 12:211 may legally prohibit the use of its courts to a foreign corporation doing business within the state, where it has not so qualified. The subject statute reads in part:
"A. No corporation doing business in this state shall be permitted to present any judicial demand before any court of this state, unless it has complied with the laws of this state for doing business herein, and has paid all taxes, excises, and licenses due to the state. This Section shall not be construed to prevent the bringing of a cause of action against any corporation.
"B. The burden of proof shall rest upon the corporation to establish that it has complied with the laws of this state for doing business herein. The only legal evidence of such compliance shall be the certificate of the Secretary of State or a duly authenticated copy thereof.
"C. The burden of proving that a corporation has not paid any tax, excise or license due to the state shall rest upon the party asserting such fact, which fact may be proved by a certificate from the proper tax collector or by any other competent evidence."
We revert to the principal question posed herein: Does the operation by plaintiff corporation constitute doing business with the State of Louisiana? The appellant herein is not attempting to establish it has complied with the laws of this state for doing business herein, or to prove payment of taxes, and, therefore, references in the statute to the burden of proof are inapt in the case at bar. The exception of want of capacity presents an affirmative defense, the burden of proving which rests upon the *374 party urging it. McAllister v. Srodes, 1840, 14 La. 442; Diggs v. Parish, 1841, 18 La. 6; Ford v. Simmons, 1858, 13 La.Ann. 397; Sullivan v. Goldman, 1867, 19 La.Ann. 12; Orleans Discount Co., Inc. v. Derbes, 1930, 170 La. 660, 129 So. 121; Hess Warming & Ventilating Co. v. Home Comforts Corporation, 1944, 205 La. 1045, 18 So.2d 611.
In R. J. Brown Co. v. Grosjean, supra [189 La. 778, 180 So. 636], the test of interstate commerce as announced in International Text-Book Co. v. Pigg, 217 U.S. 91, 30 S.Ct. 481, 54 L.Ed. 678, 27 L.R.A., N.S., 493, was referred to with approval, the court saying:
"The test of interstate commerce is transportation from one state into another. If the goods are already in the state when sold, there can be no transportation into the state under the contract and the transaction cannot be interstate. The court said:
"`Importation into one state from another is the indispensable element, the test of interstate commerce.'"
Interpretations placed by the courts upon the power conferred upon Congress by the commerce clause of the Constitution declare that such power is broad, general, continuing, complete, and plenary, and it is subject to no limitations other than those presented by the Constitution itself. 15 C.J.S. verbo Commerce § 6, p. 261.
In Reynolds Metal Co. v. T. L. James & Co., Inc., La.App.1954, 69 So.2d 630, Judge McBride of the Orleans Court of Appeal, when confronted with an exception of want of capacity, based on LSA-R.S. 12:211, took occasion to review many of the decisions of this state which discussed the question of what constitutes doing business within the state. Among the decisions so reviewed were: Proctor Trust Co. v. Pope, La.App. 1943, 12 So.2d 724; State v. Best & Co., 1939, 194 La. 918, 195 So. 356; Norm Advertising, Inc. v. Parker, La.App.1937, 172 So. 586; National Pumps Corporation v. Bruning, La.App.1941, 1 So.2d 320; J. R. Watkins Co. v. Goudeau, La.App.1953, 63 So.2d 161. In each of the cases cited the particular transactions questioned were found not to constitute doing business within the state. We shall briefly refer to the reasoning of some of the decisions.
In Reynolds Metal Co. v. T. L. James & Co., Inc., the corporation's representatives in the state were merely employed to solicit orders and had no power to bind the corporation, and their acts of courtesy to customers in settling complaints where possible, and in receiving checks for transmission to the home office of the corporation did not destroy the interstate nature of the commerce. In State v. Best & Co., a foreign corporation employed salesmen who displayed samples of their merchandise in a hotel room for the purpose of securing orders but the salesmen had no authority to deliver any merchandise or accept payment therefor and were solely authorized to take orders subject to approval of the corporation at its home office in New York, from which the merchandise was shipped to the customers, and it was held the transaction could not be regarded as local business. In Norm Advertising, Inc. v. Parker the fact that the agents of plaintiff were authorized to receive the initial payment for the order was held to be of no importance because it accompanied the order and became the property of the corporation only upon its approval of the order. In J. R. Watkins Co. v. Goudeau, this court held plaintiff was not engaged in business in Louisiana, so as to bring it under the ban of the provisions of LSA-R.S. 12:211, although it had dealers in this state whose credit was secured by the signature of local guarantors and such dealers were set up in business by plaintiff to sell its products in certain areas. In People's Tobacco Co. v. American Tobacco Company, 246 U.S. 79, 38 S.Ct. 233, 235, 62 L.Ed. 587, Ann.Cas.1918C, 537, the Supreme Court of the United States declared:
"* * * As to the continued practice of advertising its wares in Louisiana, and sending its soliciting agents into that State, as above detailed, the *375 agents having no authority beyond solicitation, we think the previous decisions of this court have settled the law to be that such practices did not amount to that doing of business which subjects the corporation to the local jurisdiction for the purpose of service of process upon it. Green v. Chicago, Burlington & Quincy Ry. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916; Philadelphia & Reading Ry. Co. v. McKibbin, 243 U.S. 264, 268, 37 S.Ct. 280, 61 L.Ed. 710."
The Supreme Court of the United States, on the other hand, in Cheney Bros. Co. v. Commonwealth of Massachusetts, 246 U.S. 147, 155, 38 S.Ct. 295, 297, 62 L.Ed. 632, 637, a case where a Minnesota corporation had an office in Massachusetts where it employed several salesmen for the purpose of soliciting and taking orders from retailers and then turned the orders over to the wholesale dealer, who filled them, found that the corporation was engaged in doing business in Massachusetts, saying:
"* * * Thus the salesman, although not in the employ of the wholesaler, is selling flour for him. Of course, this is a domestic businessinducing one local merchant to buy a particular class of goods from another and may be taxed by the state, regardless of the motive with which it is conducted."
Case v. Mills Novelty Co., 1940, 187 Miss. 673, 193 So. 625, 126 A.L.R. 1102, is a decision wherein it was likewise held the acts of the foreign corporation constituted doing intrastate business. There, an Illinois corporation accepted in Illinois a written order from a Mississippi resident for an ice cream dispenser. The contract of sale, however, contained a service agreement, the performance of which required the corporation to employ a local mechanic. The opinion resolved that the acts of servicing the dispenser constituted doing business in the state.
Cheney Bros. Co. v. Commonwealth of Massachusetts and Case v. Mills Novelty Company illustrate clearly how transactions may be characterized with an intra-state character. In the first named case a foreign corporation actually was selling flour on behalf of the local wholesale dealer. In the latter case in order to service the ice cream dispenser the corporation engaged local labor for the duration of its service contract, and this part of the transaction impressed the deal with an intra-state character.
We are of the opinion exceptor has failed to sustain his burden of proof by showing by a preponderance of the evidence plaintiff was engaged in business within the state. All the acts comprising the transaction herein involved constitute an integral part of interstate commerce. The sketch of customers' premises with the number and location of the plants suggested by the salesmen was simply for the purpose of solicitation, of inducing the customers to give an order. Apparently, it was a simple drawing, and although drawn to scale, its acceptance was optional with the customer, and was a gratuity. The order, when obtained, brought goods into interstate commerce, and no servicing was performed.
Under the decision herein reached, there is no need for comment on the ruling which dismissed plaintiff's suit with prejudice. However, we opine that when an exception of want of capacity is sustained in limine litis, a dismissal should be as of non-suit so as to preserve the cause of action, which is not destroyed by sustention of the exception.
For the reasons hereinabove set forth, the judgment from which appealed is reversed and set aside and the exception of want of capacity is overruled. The cause is remanded to the Fourth Judicial District Court for the Parish of Ouachita, for further proceedings, according to law and not inconsistent with the views herein expressed. Appellee is taxed with costs of this appeal. All other costs shall await the final outcome of the suit.